UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: ____________________

KELLY L. DUGAS,

Plaintiff,

v.

CARNIVAL CORPORATION LTD. d/b/a
CARNIVAL CRUISE LINE,

Defendant.
________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, KELLY L. DUGAS ("Plaintiff"), through undersigned counsel, files suit against Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE, for damages and alleges:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, KELLY L. DUGAS, is a resident and citizen of Ohio, and is otherwise sui juris.

2. Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE ("Carnival" or "Defendant"), is a foreign corporation incorporated in Bermuda, with its principal place of business in Miami, Florida. Defendant does business in the State of Florida and, at all times material hereto, was and is doing business in Florida, and regularly conducts substantial and not isolated business in this district.

3. At all material times, Defendant owned, operated, managed, maintained, controlled, crewed, and/or was otherwise responsible for the vessel known as the CARNIVAL

MARDI GRAS (the "Vessel"), and operated it on navigable waters.

4. This is an action for damages that exceed Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the action is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state. Plaintiff is a citizen of Ohio; Defendant is a citizen of Bermuda and Florida. Alternatively, this Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

6. Venue is proper in this district because Defendant maintains its principal place of business in Miami-Dade County, Florida, regularly conducts substantial business within this district, and a substantial part of the events and transactions giving rise to this action are connected to this district. Further, the passenger ticket contract issued by Defendant contains a forum-selection clause requiring that claims of this nature be filed in the United States District Court for the Southern District of Florida, Miami Division, and Plaintiff files suit in this forum because that forum-selection clause compels it, and demands a jury trial in accordance with the savings to suitors clause.

7. All conditions precedent to the filing and maintenance of this action have occurred, have been performed, or have otherwise been waived.

## **GENERAL ALLEGATIONS OF FACT**

8. On or about January 11, 2026 (the "Incident Date"), Plaintiff, KELLY L. DUGAS, was a fare-paying passenger aboard the Vessel.

9. At all material times, Plaintiff was a passenger lawfully aboard the Vessel and was

in a location where she was invited and reasonably expected to be.

10. On the Incident Date, after finishing breakfast, Plaintiff was walking in an exterior passenger walking area on the open deck of Deck 8 of the Vessel (the "subject area").

11. The flooring in the subject area is API Syntheteak, a synthetic teak decking material. Upon information and belief, Defendant selected and installed API Syntheteak flooring on the open decks of the Vessel, including on Deck 8 and on the Lido Deck.

12. As Plaintiff walked through the subject area, she unexpectedly encountered water on the API Syntheteak flooring. As a result, Plaintiff slipped on the wet flooring, lost her balance, and fell to the deck.

13. The amount of water on the flooring of the subject area was significant, as depicted in the following photograph of the subject area taken immediately after Plaintiff's fall:



14. Throughout the remainder of the cruise, Plaintiff observed what appeared to be a

practice by Defendant's crewmembers of cleaning the upper decks and pushing the water off the sides of those decks, where it would land on Deck 8 below and create a similar pattern of wetness on the Deck 8 flooring. Upon information and belief, the water on which Plaintiff slipped was deposited on Deck 8 in the same manner.

15. The water on the API Syntheteak flooring created an unreasonably dangerous slipping hazard in a passenger walking area, and the subject area constituted a dangerous condition for reasons that include, but are not limited to:

a. Defendant permitted a significant amount of water to accumulate and remain on the API Syntheteak flooring in a passenger walking area;

b. Upon information and belief, the water was deposited on the Deck 8 walking surface by Defendant's crewmembers, who pushed water off the upper decks during cleaning;

c. The API Syntheteak flooring in the subject area became unreasonably slippery when wet;

d. The subject area did not have adequate slip-resistant treatment, non-skid coating, or mats for an exterior walking surface foreseeably exposed to water; and/or

e. The subject area did not contain any cautionary signage, warning cones, or barriers to alert Plaintiff or other passengers that the deck was wet, slippery, and/or unreasonably slippery when wet.

16. The foregoing hazardous condition(s) were not open and obvious to Plaintiff, and Plaintiff had no way to assess the degree of slipperiness of the API Syntheteak flooring until after she had already fallen.

17. The subject area, including its API Syntheteak flooring, was designed, constructed, selected, approved, installed, cleaned, and/or maintained by Defendant and/or its agents, employees, and crewmembers, and was within Defendant's exclusive care, custody, and control.

18. As a direct and proximate result of the fall, Plaintiff sustained serious and permanent injuries, including a complete tear of the proximal attachment of all three left hamstring tendons with significant retraction. Plaintiff was unable to bear weight after the fall and was taken by wheelchair to the Vessel's medical center, and she has since undergone open surgical repair of the left proximal hamstring followed by months of physical therapy.

**DEFENDANT'S NOTICE**

19. Prior to and at the time of Plaintiff's incident, Defendant knew or should have known of the dangerous condition(s) outlined above for reasons that include, but are not limited to:

a. Upon information and belief, Defendant's crewmembers created the condition by pushing water off the upper decks onto Deck 8 during cleaning;

b. The subject area sits below the upper decks, so water pushed off those decks during cleaning regularly collected there;

c. Defendant's crewmembers routinely cleaned and inspected the subject area, so Defendant knew or should have known that water collected there and made the flooring slippery;

d. The amount of water on the deck shows that it had been there long enough for Defendant, exercising reasonable care, to discover and remove it;

e. Defendant's safety training lists "Open Decks" first among the "areas of most potential slips and falls" (Exhibit A);

f. Upon information and belief, Defendant's crew training requires caution signs whenever crew wet-clean a floor, which shows Defendant knows its cleaning creates a slipping hazard;

g. Upon information and belief, Defendant tests the slip resistance of its API Syntheteak flooring and so knows how slippery it becomes when wet; and

h. Defendant chose and installed the API Syntheteak flooring and so knew or should have known that it becomes unreasonably slippery when wet.

20. At all times material, Carnival knew or should have known that it was highly probable for passengers such as Plaintiff to be injured by slipping and falling on wet API Syntheteak flooring aboard the Vessel, considering prior incidents occurring aboard the Vessel under similar circumstances. Such prior incidents are substantially similar because they involve passengers who slipped and fell: 1) on wet exterior and/or open-deck walking surfaces aboard the Vessel; 2) where water had accumulated on the walking surface; and/or 3) on API Syntheteak flooring or substantially similar open-deck flooring that became unreasonably slippery when wet. Examples of such prior incidents known to Plaintiff at this time, and others known to Defendant but not yet available to Plaintiff, include the following:

a. On or about December 12, 2021, passenger W.H. slipped and fell on water on outdoor-deck API Syntheteak flooring on the Lido Deck aboard Defendant's vessel Mardi Gras. That passenger alleged that the flooring was unreasonably slippery. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the API Syntheteak flooring surface on which Plaintiff slipped and fell. See W.H. v. Carnival Corp., Case No. 1:22-cv-20204-DPG (S.D. Fla.).

b. On or about January 15, 2022, passenger S.G. slipped and fell on water on outdoor-deck API Syntheteak flooring on the Lido Deck aboard Defendant's vessel Mardi Gras. That passenger alleged that the flooring was unreasonably slippery. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the API Syntheteak flooring surface on which Plaintiff slipped and fell. See S.G. v. Carnival Corp., Case No. 1:22-cv-23751-JEM (S.D. Fla.).

c. On or about April 24, 2022, passenger K.H. slipped and fell on water on outdoor-deck API Syntheteak flooring on the Lido Deck aboard Defendant's vessel Mardi

Gras. That passenger alleged that the flooring was unreasonably slippery. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the API Syntheteak flooring surface on which Plaintiff slipped and fell. See K.H. v. Carnival Corp., Case No. 1:23-cv-20633 (S.D. Fla.).

d. On or about June 5, 2022, passenger M.P. slipped and fell on a large puddle of water on the outdoor Havana pool deck on Deck 8—the same deck on which Plaintiff fell—aboard Defendant's vessel Mardi Gras. That passenger alleged that the flooring was unreasonably slippery. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the API Syntheteak flooring surface on which Plaintiff slipped and fell. See M.P. v. Carnival Corp., Case No. 1:22-cv-22908-BB (S.D. Fla.).

e. On or about June 25, 2022, passenger L.B. slipped and fell on water on outdoor-deck API Syntheteak flooring on the Lido Deck aboard Defendant's vessel Mardi Gras. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the API Syntheteak flooring surface on which Plaintiff slipped and fell. See L.B. v. Carnival Corp., Case No. 1:23-cv-21913-BB (S.D. Fla.).

f. On or about September 17, 2022, passenger S.T. slipped and fell on water on outdoor-deck API Syntheteak flooring on the Lido Deck aboard Defendant's vessel Mardi Gras. That passenger alleged that the flooring was unreasonably slippery. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the API Syntheteak flooring surface on which Plaintiff slipped and fell. See S.T. v. Carnival Corp., Case No. 1:24-cv-20622-RKA (S.D. Fla.).

g. On or about October 27, 2022, passenger K.G. slipped and fell on water on outdoor-deck API Syntheteak flooring on the Lido Deck aboard Defendant's vessel Mardi Gras. That passenger alleged that the flooring was unreasonably slippery. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the API Syntheteak flooring surface on which Plaintiff slipped and

fell. See K.G. v. Carnival Corp., Case No. 1:23-cv-23769-KMW (S.D. Fla.).

h. On or about February 16, 2023, passenger V.G. slipped and fell on water on outdoor-deck API Syntheteak flooring on the Lido Deck aboard Defendant's vessel Mardi Gras. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the API Syntheteak flooring surface on which Plaintiff slipped and fell. See V.G. v. Carnival Corp., Case No. 1:24-cv-21484-BB (S.D. Fla.).

i. On or about March 18, 2023, passenger J.P. slipped and fell on water on outdoor-deck API Syntheteak flooring on the Lido Deck aboard Defendant's vessel Mardi Gras. That passenger alleged that the flooring was unreasonably slippery. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the API Syntheteak flooring surface on which Plaintiff slipped and fell. See J.P. v. Carnival Corp., Case No. 1:24-cv-20975-RAR (S.D. Fla.).

21. At all times material, Carnival knew or should have known that it was highly probable for passengers such as Plaintiff to be injured by slipping and falling on wet exterior deck flooring, considering prior incidents occurring on Excel-class sister ships under similar circumstances. The Mardi Gras, Carnival Celebration, and Carnival Jubilee are Excel-class vessels. Upon information and belief, sister ships within the Excel class are built, designed, constructed, and outfitted according to substantially identical or substantially similar standards, specifications, materials, and finishes, including substantially identical or substantially similar open-deck layouts, API Syntheteak or substantially similar deck flooring, walking surfaces, drainage features, and slip-resistant treatments. These prior incidents are substantially similar because they involve passengers who slipped and fell: 1) on wet exterior and/or open-deck walking surfaces aboard Excel-class vessels; and/or 2) on API Syntheteak flooring or substantially similar flooring that became unreasonably slippery when wet. For instance:

a. On or about December 11, 2024, passenger C.C. slipped and fell on a

foreign transitory substance, believed to be water, while walking across the outdoor deck on Deck 8 of Defendant's Excel-class vessel Carnival Jubilee, near the smoking section adjacent to the Pig and Anchor. Upon information and belief, the flooring at the location of this prior incident was identical or substantially similar to the API Syntheteak flooring surface on which Plaintiff slipped and fell. See C.C. v. Carnival Corp., Case No. 1:26-cv-20207 (S.D. Fla.).

22. Defendant, at all relevant times, was aware of applicable industry safety standards, including those of ASTM International, ANSI, the International Safety Management ("ISM") Code, and other recognized standards governing safe walking surfaces, slip resistance, and passenger safety, including as applied to exterior open-deck walking surfaces. See, e.g., IMO MSC Circular 735 (June 24, 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines and ADA Accessibility Guidelines; 46 C.F.R. §§ 72.05-20(n), 116.438(h); ASTM F-1166-07; the Life Safety Code; and the Safety of Life at Sea (SOLAS) Treaty. Further, industry standards mandate that flooring surfaces maintain a minimum coefficient of friction of .41 under all conditions, including when wet. Furthermore, binding international law and regulations require the Vessel to have both a Planned Maintenance Management System and a Safety Management System, which require the Vessel to conduct mandatory periodic inspections through which Defendant knew or should have known of the dangerous conditions and of its non-compliance with the foregoing safety standards.

**<u>COUNT I – GENERAL NEGLIGENCE</u>**

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through twenty-two (22) as though alleged originally herein.

23. At all material times, Defendant owed Plaintiff, a passenger, a duty to exercise reasonable care under the circumstances for Plaintiff's safety.

24. On the Incident Date, Defendant, through its agents, employees, and/or crewmembers, breached its duty to exercise reasonable care under the circumstances through one or more of the following acts and/or omissions:

a. Pushing, and/or permitting its crewmembers to push, water off the upper decks during cleaning such that it landed on and accumulated on the Deck 8 walking surface below;

b. Failing to inspect and dry the Deck 8 walking surface after cleaning the upper decks;

c. Failing to reasonably inspect the subject area for water and wet, slippery conditions;

d. Failing to timely dry or otherwise remove the water on the API Syntheteak flooring within a reasonable time;

e. Failing to block off, cordon, or otherwise restrict access to the wet portion of the subject area until the water was removed;

f. Failing to place adequate warning signage, cones, or barriers in the subject area to alert passengers to the hazardous condition;

g. Failing to provide adequate drainage and/or slip-resistant treatment for the API Syntheteak flooring in the subject area;

h. Failing to implement and enforce reasonable policies and procedures for the cleaning, inspection, maintenance, and drying of exterior walking surfaces aboard the Vessel;

i. Failing to reasonably train its crewmembers to clean the upper decks without creating hazards on the decks below, to inspect, maintain, and remedy dangerous conditions, and to warn passengers of the same; and/or

j. Otherwise failing to exercise reasonable care under the circumstances.

25. All or some of the above acts and/or omissions by Defendant, its agents, employees,

and/or crewmembers, directly and proximately caused and/or contributed to Plaintiff being severely injured.

26. At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 19-22, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

27. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, scarring, physical impairment, inconvenience, incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries, and Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments, and will require future medical care and treatment, in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, KELLY L. DUGAS, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

## COUNT II – NEGLIGENT FAILURE TO WARN

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through twenty-two (22) as though alleged originally herein.

28. At all material times, Defendant owed Plaintiff a duty to exercise reasonable care under the circumstances, including the duty to warn Plaintiff of dangers of which Defendant knew or should have known and which were not open and obvious to Plaintiff.

29. Plaintiff traversed the subject area. This is a designated passenger area that Plaintiff was reasonably expected to visit.

30. On the Incident Date, Defendant breached its duty to warn Plaintiff through one or more of the following acts and/or omissions:

a. Failing to warn Plaintiff of the water on, and the wet and unreasonably slippery condition of, the API Syntheteak flooring in the subject area;

b. Failing to warn Plaintiff that water pushed off the upper decks during cleaning landed on and accumulated on the Deck 8 walking surface;

c. Failing to warn Plaintiff of the extent to which the API Syntheteak flooring became unreasonably slippery when wet;

d. Failing to warn Plaintiff of prior slip-and-fall incidents on the same or substantially similar wet open-deck flooring aboard the Vessel and its sister ships;

e. Failing to place adequate warning signage, cones, or barriers in the subject area; and/or

f. Otherwise failing to reasonably warn Plaintiff of the dangerous condition.

31. All or some of the above acts and/or omissions by Defendant, its agents, employees, and/or crewmembers, directly and proximately caused and/or contributed to Plaintiff being severely injured.

32. At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 19-22, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal

injury to Defendant's passengers. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

33. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, scarring, physical impairment, inconvenience, incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries, and Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments, and will require future medical care and treatment, in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, KELLY L. DUGAS, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

## COUNT III – NEGLIGENT FAILURE TO MAINTAIN

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through twenty-two (22) as though alleged originally herein.

34. At all material times, it was the duty of Defendant to maintain the Vessel, and the exterior walking areas on Deck 8 in particular, in a reasonably safe condition under the circumstances.

35. On the Incident Date, Defendant breached its duty to maintain the subject area in a reasonably safe condition through one or more of the following acts and/or omissions:

a. Failing to implement deck-cleaning procedures that prevented water from being pushed off the upper decks onto the Deck 8 walking surface;

b. Failing to inspect the subject area for water and wet, slippery conditions, including after the upper decks were cleaned;

c. Failing to conduct regular coefficient of friction testing on the API Syntheteak flooring under the foreseeable wet conditions in which Plaintiff encountered it;

d. Failing to take reparative steps to maintain a sufficient coefficient of friction on the API Syntheteak flooring;

e. Failing to dry or otherwise remedy the wet and unreasonably slippery condition of the API Syntheteak flooring;

f. Failing to regularly clean and dry the subject area;

g. Failing to require that the subject area be cleaned after the upper deck water was allowed to run off to the lower deck;

h. Failing to maintain adequate drainage in and around the subject area; and/or

i. Failing to implement and enforce reasonable maintenance and housekeeping procedures for the subject area.

36. All or some of the above acts and/or omissions by Defendant, its agents, employees, and/or crewmembers, directly and proximately caused and/or contributed to Plaintiff being severely injured.

37. At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 19-22, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

38. As a direct and proximate result of the negligence of Defendant, Plaintiff was

injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, scarring, physical impairment, inconvenience, incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries, and Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments, and will require future medical care and treatment, in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, KELLY L. DUGAS, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

**COUNT IV – VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) FOR THE NEGLIGENCE OF DEFENDANT'S CREWMEMBERS**

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through twenty-two (22) as though alleged originally herein.

39. Upon information and belief, Defendant assigned specific crewmembers to clean, inspect, and dry the subject area and the upper decks above it on the Incident Date. A specific and identifiable group of crew members were assigned to the subject area and the deck above.

40. The crewmembers assigned to clean the upper decks above Deck 8, and to inspect, clean, dry, maintain, warn of, and supervise the exterior walking area on Deck 8, were employees, crewmembers, and/or agents of Defendant, acting within the course and scope of their employment and in furtherance of the business and mission of Defendant's Vessel.

41. At all material times, it was the duty of Defendant's crewmembers to provide Plaintiff with reasonable care under the circumstances, including the duty to clean the upper decks without creating hazards on the decks below, and to inspect, clean, dry, maintain, supervise, and

warn of dangerous conditions in the exterior walking area on Deck 8.

42. On or about the Incident Date, Defendant's crewmembers breached their duty to provide Plaintiff with reasonable care under the circumstances through the following acts and/or omissions:

a. Pushing water off the upper decks during cleaning such that it landed on and accumulated on the Deck 8 walking surface below;

b. Failing to inspect and dry the Deck 8 walking surface after cleaning the upper decks;

c. Failing to inspect the subject area for water and wet, slippery conditions;

d. Failing to dry or otherwise remove the water on the API Syntheteak flooring in the subject area;

e. Failing to block off or restrict access to the wet portion of the subject area until the water was removed;

f. Failing to follow Carnival policy for cordoning off and cleaning wet areas;

g. Failing to place adequate warnings, cones, or barriers in the subject area; and/or

h. Failing to reasonably supervise and monitor the subject area.

43. All or some of the above negligent acts and/or omissions by Defendant's crewmembers directly caused and/or contributed to Plaintiff being severely injured and occurred while the crewmembers were engaged in furtherance of the business of Defendant's Vessel; accordingly, Defendant is vicariously liable for their negligence.

44. Defendant is vicariously liable for negligent acts of its employees/crewmembers. A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. Yusko v. NCL (Bahamas), Ltd., 4 F.4th 1164, 1169-1170 (11th Cir. 2021). In this case, Defendant's deck-

cleaning crewmembers' and deck personnel's negligent acts caused Plaintiff's injuries.

45. As a direct and proximate result of the negligence of Defendant's crewmembers, employees, and/or agents, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, scarring, physical impairment, inconvenience, incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries, and Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments, and will require future medical care and treatment, in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, KELLY L. DUGAS, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION LTD. d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

Dated: October 1, 2026

Respectfully submitted,

By: /s/ *Griffin Sher*
Griffin W. Sher
FBN: 1023219
*Morgan & Morgan, P.A.*
*703 Waterford Way #1000,*
*Miami, FL 33126*
*Phone: (786)450-5829*
*Counsel for the Plaintiff*